IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : CRIMINAL ACTION |
| v. | : |
| | : NO. 10-182-2 |
| JONATHAN GANZ | : |
| | : |
| | : |

MEMORANDUM

TUCKER, C.J.                                                                February 9th, 2015

This criminal case arises out of Defendant Jonathan Ganz's fraudulent scheme to obtain mortgage loans to finance home improvements for consumers. Defendant pleaded guilty to one count of wire fraud in violation of 18 U.S.C. § 1343. Presently before the Court is the Government's request for an order of restitution pursuant to the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A. Upon consideration of the parties' arguments and submissions, and for the following reasons, the Court orders restitution in the aggregate amount of $170,538.82.

I.   FACTUAL AND PROCEDURAL HISTORY

Defendant's criminal conduct stems from his collaboration with co-Defendant Calvin Harris in a home improvement scheme to defraud consumers and mortgage lenders. In 2003, Harris operated the Philadelphia Home Improvement Outreach Program ("PHIOP"), which promised to undertake home improvement projects for customers and to assist in obtaining any necessary financing. Defendant, a loan processor in the Philadelphia area, helped Harris to obtain mortgages for PHIOP customers by deceiving lenders such as Wells Fargo Bank, N.A. ("Wells Fargo") and Chase Bank USA, N.A. ("Chase" or, collectively, "Banks"). Defendant and

Harris used false income and/or employment documents in loan applications. In 2005 and 2006, when financing proved more difficult to obtain, Defendant arranged for some PHIOP customers' properties to be transferred to his mother as a straw purchaser because she could obtain mortgages on them. The customers then paid rent to PHIOP to satisfy the mortgages and to purchase the property back. The closing documents on these land purchases falsely reflected that Defendant's mother brought cash to the closings when she did not. The defendants also concealed the fact that the original homeowner had entered into an agreement to buy back the property at a later date. As a result, the Banks approved several thousand dollars' worth of mortgage loans ("PHIOP loans").

Despite the loans, Harris had insufficient funds for PHIOP operations and he continually sought new customers to finance the projects of current ones. The scheme continued from October 2003 to April 2006 when PHIOP collapsed, resulting in substantial pecuniary loss to homeowners and mortgage lenders. PHIOP customers also suffered incomplete or substandard home improvement work and some were required to repay the mortgages fraudulently obtained by the defendants.

On March 26, 2010, Defendant was charged by information for one count of wire fraud in violation of 18 U.S.C. § 1343 and § 2. Defendant pleaded guilty, which the Court accepted on July 26, 2010. After two sentencing hearings, the Court sentenced Defendant to five years of probation, six months of home monitoring, and a special assessment of $100. The Government also requested an order of restitution but Defendant disputed any obligation for restitution to Wells Fargo or Chase, arguing that they were not "victims" under the MVRA. The Court reserved ruling on the issue and took the matter under review.

## II. STANDARD OF REVIEW

Restitution is mandatory under the MVRA for certain types of crimes, including any offense "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1)(B). The MVRA defines "victim" to mean "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered[.]" *Id.* § 3663A(a)(2). If the offense "involves as an element a scheme, conspiracy, or pattern of criminal activity", the term "victim" includes "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." *Id.*

The Third Circuit adopted a two-prong test to determine whether a victim was "directly and proximately harmed" such that restitution is appropriate under the MVRA. *U.S. v. Fallon*, 470 F.3d 542, 548-49 (3d Cir. 2006). First, "[r]estitution should not be ordered in respect to a loss which would have occurred regardless of the defendant's conduct." *Id.* at 549 (quoting *U.S. v. Vaknin*, 112 F.3d 579, 589 (1st Cir. 1997)); *see U.S. v. Akande*, 200 F.3d 136, 141 (3d Cir. 1999) ("[C]ourts have held that a defendant may not be ordered to pay restitution for losses unrelated to the acts for which he was convicted."). Second, "[e]ven if but for causation is an acceptable theory, limitless but for causation is not. Restitution should not lie if the conduct underlying the offense of conviction is too far removed, either factually or temporally, from the loss." *Fallon*, 470 F.3d at 549; *see U.S. v. Kones*, 77 F.3d 66, 70 (3d Cir. 1996) ("[W]e interpret 'direct' to require that the harm to the victim be closely related to the scheme, rather than tangentially linked.").

If a court determines that restitution is required under the MVRA, it is to "order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664

3

(f)(1)(A); *id.* § 3663A(d). If the amount of restitution is in dispute, the court is to determine the proper amount by the preponderance of the evidence. *Id.* § 3664(e). The Government has the "burden of demonstrating the amount of the loss sustained by a victim as a result of the offense[.]" *Id.*

## III. DISCUSSION

The thrust of Defendant's argument against restitution for Wells Fargo and Chase is that they were complicit in Defendant's fraud, so they are not "victims" entitled to restitution under the MVRA. Defendant argues that the Banks, like most subprime lenders at the time, used policies and procedures that enabled the approval of large sums of subprime loans without proper due diligence. Defendant continues, "That atmospheric information would be passed on by lender sales personnel to loan brokers, like [Defendant], who were paid a fee by the lender for bringing borrowers to the lenders." (Def. Sentencing Memo., 10, Doc. 60.) Defendant concludes that the Banks' permissive lending policies likened the Banks to co-conspirators rather than victims because they facilitated Defendant's fraud.

Defendant describes general lending practices used at the height of the subprime mortgage market, but, without more, this does not support a conclusion that either Wells Fargo or Chase was complicit in the particular transactions of Defendant's fraudulent mortgage scheme. Courts have acknowledged that lending policies and procedures may have encouraged fraud, but this does not prevent banks from also being victims of such fraud. *See U.S. v. Haines*, No. 11-596-4, slip op. at 9 (E.D. Pa. Nov. 14, 2013) ("Thus, *while Chase was still the victim of a mortgage fraud scheme*, Chase's willingness to approve millions in loans, sight unseen, without any due diligence or verification, certainly helped to facilitate the fraud." (emphasis added)); *U.S. v. Engelmann*, 720 F.3d 1005, 1014 (8th Cir. 2013) (rejecting a defendant's argument that,

4

because "they are bad actors whose conduct caused the sub-prime mortgage crisis", financial institutions are not "victims" under the MVRA); *see also U.S. v. Ojeikere*, 545 F.3d 220, 222-23 (2d Cir. 2008) ("We hold that restitution under the MVRA may not be denied simply because the victim had greedy or dishonest motives, where those intentions were not *in pari materia* with those of the defendant.").

Defendant also offers evidence of communications between him and Wells Fargo sales personnel in an effort to demonstrate their collusion during the application period for one of the PHIOP loans. Mere communication, however, does not prove complicity. Even if Defendant shows complicity between sales personnel and Defendant—which he does not—it does not follow that Wells Fargo as an entity was complicit in the fraud. The Government showed, through expert testimony, that the sales function is separate from the underwriting function and that a sales employee who conspired with Defendant to obtain a loan would have also been defrauding Wells Fargo. *See U.S. v. Stein*, 756 F.3d 1027, 1030 (7th Cir. 2014) (finding currency exchanges to be victims, even though the exchanges' owner was the one who proposed the check kiting scheme that gave rise to defendant's wire fraud). The fact remains that Wells Fargo serviced the PHIOP loans and were harmed in doing so. Thus, the Court finds that Wells Fargo and Chase were not complicit in Defendant's fraudulent scheme and are not precluded from being victims.

The Court now considers the more specific question of whether the Banks are "victims" of Defendant's wire fraud as contemplated by the MVRA. "For scheme-based crimes such as wire fraud and mail fraud, the term 'victim' is broadly defined by the MVRA." *Fallon*, 470 F.3d at 548 n.12 (internal citations omitted). To be victims due restitution, the Banks must have been "directly and proximately harmed" by Defendant's criminal conduct in the course of his scheme.

*See* 18 U.S.C. § 3663A(a)(2). The Court applies the two-prong test articulated by the Third Circuit. *See Fallon*, 470 F.3d at 549. First, the Court finds that but for Defendant's conduct in submitting false documents and/or using a straw purchaser, the Banks would not have made the PHIOP loans that eventually resulted in their losses. Defendant provides no evidence that the Banks would have made these loans absent Defendant's misrepresentations and provision of false documents. Second, the Court finds that the Banks' losses from the PHIOP loans directly result from Defendant's conduct and are not so far removed that restitution is inappropriate. Indeed, the sole purpose of Defendant's participation in his scheme with Harris was to obtain financing from lenders such as Wells Fargo and Chase. As part of his plea agreement, Defendant admits to engaging in "a scheme to falsify documents used to obtain mortgage loans." (Guilty Plea Agreement, ¶ 1, Doc. 21.) Thus, the Court concludes that Wells Fargo and Chase are victims under the MVRA.

Because the Banks suffered a pecuniary loss, restitution is mandatory.[1] 18 U.S.C. § 3663A(c)(1)(B). The parties stipulated that the amount of pecuniary loss lies between $120,000 and $200,000. (Pre-Sentence Report, Feb. 28, 2012, ¶ 6(b).) Prior to sentencing, the Government provided an itemized accounting of losses by individual PHIOP customers for a total of $170,538.82.[2] (Nov. 4, 2014 Hearing, Gov't Ex. 1.) The Defendant does not challenge the accuracy or veracity of any amount claimed. The Court therefore orders restitution in the amount of $170,538.82. An appropriate order follows.

---

[1] Defendant also agreed in his plea to make restitution as directed by the Court. (Guilty Plea Agreement, ¶ 3.)
[2] The losses to Wells Fargo and Chase can be characterized as either the amount forgiven by the lender or the unpaid principal balance of the loan. The individual loans for which the Banks incurred losses are: $22,400.00 for a mortgage obtained in the name of Joyce Palmer; $33,500.00 for a mortgage obtained in the name of Judy Brewer; $34,508.31 for a mortgage obtained in the name of Alicia Howe-Bennet; $42,537.65 for a mortgage obtained in the name of William Johnson; and $37,592.86 for a mortgage obtained in the name of Carolyn Daniels. (Nov. 4, 2014 Hearing, Gov't Ex. 1.)